JULIAN HOOVER, Appellee, v. BANKERS' LIFE ASSOCIATION, Appellant.

**Mutual Insurance:** MEMBERSHIP: WHEN EFFECTED: PRESUMPTIONS. It
1 is a presumption of law that a certificate of life insurance was delivered on the day of its date, unless overcome by a showing otherwise; and a provision in the application that the certificate should not take effect until the first payment was made will not overcome this presumption, as such provision may be waived; and delivery of the certificate without such payment presumes that credit has been extended or prepayment waived.

**Same:** CONSTRUCTION OF CONTRACT. Where neither the by-laws nor certificate provide that one can not become a member until the first payment is made, the contract will be construed most favorably to the member or his beneficiary, and make it valid when delivered on the day of its date, though the first payment was not made.

**Same.** The levy and payment of an assessment without protest, for an assessment period subsequent to the date and delivery of the certificate, shows that the association understood that the holder of the certificate became a member at the time of its delivery to him.

**Same:** ASSESSMENTS: FORFEITURE OF GUARANTY FUND. The articles of incorporation and by-laws of the defendant association, together with the certificate of membership are construed and it is *held,* that the guaranty deposit of a member could not be used for the payment of a delinquent assessment, but that delinquency operated as an absolute forfeiture of the fund to the association.

*Appeal from Linn District Court.*—Hon. Milo P. Smith, Judge.

Friday, May 10, 1912.

The facts are stated in the opinion.  *Reversed.*

*I. M. Earle,* for appellant.

*Randall, Courtney & Harding,* for appellee.

Sherwin, J.—The defendant is an Iowa insurance assessment association. George S. Hoover, the plaintiff's husband, held a certificate of membership therein, upon which this suit in equity is based. The petition alleges that, in pursuance of a written application of May 24, 1906, "the defendant issued to the said George S. Hoover, on the 29th day of May, 1906, its certificate of membership," and that Hoover died on the 12th day of November, 1909, and that at the time of his death the certificate was in full force and effect. In its answer, the defendant admits that Hoover became one of its members on or about

the 29th day of May, 1906, but alleges that he was not a member thereof at the time of his death, because he had failed to pay a quarterly assessment regularly levied and payable during the month of October, 1909. There is no claim that Hoover had paid this assessment. An assess- ment made in September, 1906, for the quarter beginning October 1, 1906, had been paid by Hoover; and plaintiff claims that this assessment was illegally exacted of him, because he was not at that time subject to an assessment. His written application contained this clause: "I agree to accept the certificate of membership issued therein and that the same shall not take effect until the first payment shall have been made and the certificate of membership signed by the secretary, issued and received during my continuance in good health." It is agreed that the first payment referred to in the application was not made until September 1, 1906.

The first question is, When did Hoover become a member of the association? If he did not become such member until September 1, 1906, the assessment of that month was illegal, because he could not be assessed until one full quarter had passed after he became a member. The certificate of membership was dated May 29, 1906, and stated that, in consideration of the sum of $31.50, Hoover had been admitted to membership. The presumption of law is that the certificate was delivered on the day of its date. *Crabtree v. Crabtree,* 136 Iowa, 431; *Farwell v. Mfg. Co.,* 97 Iowa, 286; *Henry County v. Bradshaw,* 20 Iowa, 355. And this presumption is conclusive, unless it is overcome by facts or circumstances showing the con- trary. There is no evidence in the case showing that this certificate was not delivered on its date, save the inference to be drawn from the agreement in the application that it should not take effect until the first payment was made. But neither the certificate nor the by-laws provided that a

1. MUTUAL IN- SURANCE: membership: when effect- ed: presump- tions.

man could not become a member until the first payment
had been made, and the association could waive such pro-
vision in the application.    Even where the certificate it-
self contains such a provision, the delivery of the certificate,
without such payment, has been held to waive prepayment.
1 Cooley's Insurance Briefs, 507; 1 Joyce on Insurance,
section 79; *Wagner v. Supreme Lodge,* 128 Mich. 660 (87
N. W. 903); *Chasse v. Bankers' Reserve Fund* (S. D.)
129 N. W. 568; *Kollitz v. Insurance Co.,* 92 Minn. 234
(99 N. W. 892).

The issuance of the certificate, without actual prepay-
ment, raises the presumption that credit was given there-
for, or that prepayment was waived.    *Kollitz v. Insurance
Co., supra; Wagner v. Supreme Lodge, supra; Citizens'
Mut. Fire Ins. Co. v. Bridge Co.,* 113 Md. 430 (77 Atl.
378); *Germania Fire Ins. Co. v. Muller,* 110 Ill. App.
190; *Insurance Co. v. Miller,* 12 Wall. 285 (20 L. Ed.
398).

And where neither the certificate nor the by-laws con-
tain such limitation, the contract will be construed most
favorable to the member or his beneficiary.    *Goodwin v.
Association,* 97 Iowa, 226; *Stephens v.
Capital Ins. Co.,* 87 Iowa, 283.    If
the contract would have to be construed
most favorable to the insured, were the association claim-
ing that there was no liability, because the first payment
had not been made, it follows that it should be so construed
where the insured is claiming that he was not at the time
a member.    Furthermore, since the October, 1906, assess-
ment was legal, if Hoover became a member in May, and
illegal if he did not become a member until September,
the presumption is that it became effective as of its date,
and the assessment was legal.    *Gross v. Hornung & Scarr,*
71 Iowa, 656.

The certificate having been delivered to Hoover in
May, and the October assessment having been levied and

2. SAME: con-
struction of
contract.

paid without protest, shows that Hoover and the associa-
tion understood that he became a member
when the certificate was delivered to him;
and this practical construction of the contract is entitled
to weight. *Crowell v. Insurance Co.*, 140 Iowa, 258;
*Daniels v. Decatur County*, 99 Iowa, 440. We think it
must be held that Hoover became a member in May, 1906,
and that the assessment of October, 1906, was legal.

3. SAME.

II.   Article 9, section 2, of the defendant's articles
of incorporation provides as follows: "The business of this
association shall be conducted upon the mutual assessment
plan, in which the payment of all assessments
shall be secured by a guaranty fund, con-
tributed by each member *pro rata* according
to age at entry, this guaranty fund, together
with the insurance provided in the certificate of member-
ship, and by-laws of the association, to be forfeited upon
failure of a member to pay his assessments within the time
prescribed by the by-laws of the association." The certi-
ficate issued to Hoover contained this provision: "Upon
the failure of the above-named member to make any pay-
ment due from him to the association at its maturity in
January, April, July and October, of each year, his
guaranty deposit and all other payments made shall be
forfeited and his membership shall thereupon cease."
Article 4, section 2, of the by-laws, is in the language
following: "Upon the failure of any member to pay any
assessment or expense dues or note within the time, and
at the place required, his membership shall be thereby
forfeited, and his right to any share or interest in the
funds or property of the association shall cease absolutely
at the expiration of· the time stipulated in which such pay-
ments are required to be made, and all payments made
shall be forfeited to the association." And section 4 of
the same article provides: "In the event of the forfeiture
of the rights and privileges of a member of this associa-

4. SAME: assess-
ments: for-
feiture of
guaranty
fund.

tion the guaranty deposit pledged by such members shall become forfeited absolutely and become the property of the association." Article 10, section 4, of the articles of incorporation, provides: "The reserve fund shall consist of all guaranty deposits forfeited to the association by lapsed members and the interest accruing from all funds of the association of whatever nature; all gains, discounts and margins realized on sale of bonds and mortgages and on real estate taken under foreclosure or otherwise and all unused surplus arising from the contingent fund and all other sources. This reserve shall be set apart as an emergency fund for the purpose of providing for death losses in excess of one percent per annum of the membership of the association and for the further purpose of advances for the payment of death losses when the benefit fund is exhausted." And article 6, section 1, of the by-laws, and the certificate issued to Hoover provide, that, upon the death of a member in good standing, the guaranty deposit made by him shall be returned to his beneficiary.

Notwithstanding these several provisions of the charter, by-laws, and certificate, the appellee claims that assessment 106, payable in October, 1909, should have been paid from the guaranty fund. We are unable to find any merit in the contention. Construed in connection with the other provisions set forth herein, the purpose of the guaranty fund provided for in article 9, section 2, of the charter, is to secure to the beneficiaries of members in good standing at death the amount called for by the certificate. Thus construed, it harmonizes with the other provisions, and accomplishes a purpose that could not otherwise be accomplished. The guaranty deposit can not, at the same time, be used for the payment of delinquent assessments, and be forfeited to the association for the nonpayment of such assessment. Under the provisions quoted, the guaranty deposit can only be used in one of the two ways specified. If the member dies in good standing, it is paid to his bene-

ficiary—the whole of it, not a part thereof; if he fails to pay his assessments, it is forfeited to the reserve or emergency fund. In no case can the member have the guaranty deposit used for the payment of his dues or assessments, or have it used in any other way for his benefit. We do not see how this matter could have been made plainer, so far as the provisions under the present consideration are concerned; and we are unable to see how the intent and purpose of the charter and by-laws can be made clearer by argument or the citation of authorities.

The appellee relies on the well-established rule that the contract must be construed most strongly against the insurers. There is no contention otherwise, and, with this rule clearly in mind, we think there is no foundation for the appellee's claim that the assessment of October, 1909, should have been paid from the guaranty fund. The provision in article 3, section 2, of the by-laws, that each assessement shall be levied pro rata on the guaranty deposit of each member, might have been made clearer; but, considered with the provisions already referred to, it evidently means that the amount of the assessment shall be determined by the amount of the guaranty deposit of each member. That such was the understanding of Hoover and all the members of the association appears from the agreed statement of facts. The Missouri Court of Appeals has refused to construe the contract as claimed by appellee in *McCoy v. Bankers Life Association,* 134 Mo. App. 35 (114 S. W. 551) and *Smoot v. Association,* 138 Mo. App. 438 (120 S. W. 719). In Minnesota, provisions not so plain as the ones before us were construed against the contention of the beneficiary. *Mee v. Bankers' Life Association,* 69 Minn. 210 (72 N. W. 74).

The district court reached a wrong conclusion in this case, and the judgment is *reversed.*